# IN THE COURT OF APPEALS OF IOWA

No. 22-2042
Filed October 25, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TRINA JAE MAZZA,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,

Judge.


        Trina Mazza appeals the sentence imposed upon her conviction.

**AFFIRMED.**


        Alfredo Parrish and Tammy Gentry of Parrish Kruidenier Dunn Gentry

Brown Bergmann & Messamer, L.L.P., Des Moines, for appellant.

        Brenna Bird, Attorney General, and Bridget A. Chambers, Assistant

Attorney General, for appellee.


        Considered by Tabor, P.J., Chicchelly, J., and Mullins, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**MULLINS, Senior Judge.**

Trina Mazza appeals the sentence imposed upon her conviction, following a guilty plea, for neglect of a dependent person in relation to the care a child received in her daycare. Mazza argues the district court improperly considered unproven allegations in imposing sentence, namely that the crime resulted in the death of the child and that she was "caring for more children than permitted by law." Finding no affirmative showing of an abuse of discretion or defect in the sentencing procedure, we affirm.

## I. Background

Mazza was charged by trial information with child endangerment resulting in death and operating a child care center without a license. Pursuant to a plea agreement, Mazza agreed to plead guilty under count one to a lesser offense of neglect of a dependent person in return for the State's dismissal of count two.[1] At the plea hearing, Mazza admitted to the following:

> I provided daycare services for [T.S.] and his brother [B.S.] in Polk County, Iowa. [T.S.] was 16 months old. On February 15th, 2019, while I had custody of [T.S.] in my daycare, I placed [T.S.] in a Pack 'n Play unattended for a few minutes in a position too close to another Pack 'n Play. I recklessly exposed [T.S.] to a hazard or danger which he could not protect himself [from].

The court accepted the plea, ordered the preparation of a presentence investigation report, and set the matter for sentencing.

---

[1] The State also agreed to follow any sentencing recommendation in the presentence investigation report, although it could "argue against a deferred judgment and if the presentence investigation report does not make a recommendation as to prison or supervised probation, the State [would] be free to argue the disposition."

The ensuing presentence investigation report disclosed Mazza's lack of a criminal history and her various personal circumstances. It also noted that Mazza "has been charged with a serious offense that resulted in the death of a child. The severity of the crime may warrant a prison sentence in this case." At the sentencing hearing, defense counsel objected to the report's inclusion of the first sentence of that statement as uncharged conduct and moved to strike it from the report.[2] Counsel objected to the second sentence "because the [presentence investigator] appeared to have misinterpreted or somehow was—did not have clarity on the plea."

Mazza requested the court to grant her a deferred judgment, highlighting her lack of a criminal history, cooperation with law enforcement, remorse, supports in the community, positive performance on pre-trial release, and low recidivism score. In her statement of allocution, Mazza stated:

> I am 100 percent responsible for this horrible accident in my day care February 15th, 2019. I wish I knew the right words to say but there's nothing that would ever sound right. I put [T.S.] in a Pack 'n Play too close to another Pack 'n Play that was empty while I left the room to start lunch and I came back a few minutes later to find him on top of the Pack 'n Play stuck between the other Pack 'n Play.
> I can't get that image out of my head. I am heartbroken for the family, and I wish I could do anything to help them. I can't imagine the amount of grief you are feeling.
> I have a never-ending guilt that I failed to keep [T.S.] safe while he was placed in my care. I wish I could bring [T.S.] back. I know that nothing can ever make you feel the same but I continue to pray for you daily.

---

[2] Mazza did not specifically object to other references to the child's death in the report, which separately noted elsewhere that she had "[s]uicidal thoughts 'a few times' in 2019 following death of victim" and she suffered "[t]rauma related to death of victim." Nor did she specifically object to the victim impact statements included as attachments to the report and its addendum, which noted the child's death and that Mazza broke the law by caring for too many children when the child died.

> . . . .
> I want to apologize to [T.S.]'s family . . . .  I appreciate your pain and I hope one day you can forgive me.
> These past four years have been the most difficult I have ever experienced.  I know that if it's been this difficult for me, it must have been unbearable for you.
> Sadly enough, the most painful good-byes are the ones that are left unsaid and never fully explained.  I wish you peace, comfort, and strength to go through the dark days.  I hope that emptiness in your heart will be filled with love from those around you.

For its part, the State objected to Mazza's request to strike the single sentence in the presentence investigation report referencing death.  While the State agreed "resulting in death is not an element of the crime," it pointed out that it was part of the investigator's opinion that a prison sentence could be warranted.[3]  After the court stated it would overrule Mazza's request to strike, the State recommended the imposition of an indeterminate term of imprisonment not to exceed ten years.  In doing so, the State highlighted the circumstances of the crime, including that the child died.

The court heard several victim impact statements from the child's family, which readily disclosed the child died and that Mazza was breaking the law by providing care for too many children.  While the statements generally opined that Mazza abused many children over the years, the court noted "[t]he impact statements did contain matters that the court cannot consider such as unproven charges and accusations that the court will not consider.  That is not allowed by law."

---

[3] A presentence report investigator is required to inquire into the circumstances of the offense and to the harm to the victim and the victim's immediate family.  Iowa Code § 901.3(c), (e) (2019).

In reaching its decision to impose an indeterminate term of imprisonment not to exceed ten years, the court stated:

> The Court must consider the nature of offense, including the harm the defendant has caused to the victim. This is pertinent information for sentencing. The Court must examine the presentence investigation report, must determine which sentence would provide maximum opportunity for rehabilitation of the defendant and for the protection of the community from further offenses by the defendant.
>
> In doing this, the Court has reviewed the pertinent information. It is clear there were too many children in her care at the home. There were six children there and only one person to supervise and to oversee. It is neglectful to an extreme. Although she had been a provider for approximately 28 years, it's amazing that something else has not happened.
>
> The other things in Ms. Mazza's favor are: She has no prior record, she does have low recidivism scores, and those are in her favor.
>
> Things that are not in her favor are: Her actions at the time of this event on February 15th, 2019, including calling her husband before calling emergency responders. This I do not understand. That any person in that capacity would have seen to the welfare of the child. Failure to abide by the rules that require—are required. Such situation led to a predictable and dangerous environment for the children in her care. I don't know what the reason is, but I know that the outcome here is the most severe outcome anyone could have.
>
> Even the most primitive societies throughout history have held themselves to the highest standard of care when it comes to our children. There is no greater priority than the safety and welfare of our children. The first instinct of every parent is the protection of their young. The defendant assumed that protection, that position of the parents, for the children in her care. It was her responsibility to protect not one child but on that day approximately six. This responsibility is enormous. Any lack of attentiveness, sacrifice, devotion to children such as these is detrimental to their health, safety, and welfare and it is shown by the evidence.
>
> Now the defendant has pled guilty, which is a first step in acceptance of responsibility. Now the defendant must be held accountable. The Court finds that the protection of the public and the maximum opportunity for rehabilitation of the defendant is to impose a sentence of incarceration.

Mazza appeals the sentence imposed.

## II.    Standard of Review

We review a criminal sentence for correction of errors at law.  *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002).  "A sentence will not be upset on appellate review unless the defendant demonstrates an abuse of trial court discretion or a defect in the sentencing procedure such as the trial court's consideration of impermissible factors."  *State v. Witham*, 583 N.W.2d 677, 678 (Iowa 1998).  "If a court in determining a sentence uses any improper consideration, resentencing of the defendant is required."  *State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000).

## III.    Discussion

On appeal, Mazza argues "[t]he court erred when it considered alleged conduct related to [her] original charges and unproven allegations at sentencing." Mazza first complains the court considered the child's death.  She submits she never admitted that the child died as part of the factual basis for her plea and her objection to one part of the presentence investigation report that referenced the child's death put that consideration out of bounds in any event.

The district court may not "consider unproven or unprosecuted offenses in fashioning a defendant's sentence unless the defendant admits them or facts are presented to prove them."  *State v. Fetner*, 959 N.W.2d 129, 135 (Iowa 2021). Regardless of Mazza's various claims that the child's death was not in play, Mazza's own statement of allocution—in which she stated she failed to keep the child safe, was "100 percent responsible," wished she could bring him back, and said "the most painful good-byes are the ones that are left unsaid"—served as an acknowledgment the child died as a result of her neglect.  *See State v. Balderas*,

No. 16-0261, 2017 WL 2181198, at *2, *4 (Iowa Ct. App. May 17, 2017) (finding defendant's statement in allocution of sentence on conviction for neglect of a dependent person that her "lesson came with the loss of my angel, my child," was an acknowledgement of the victim's death and rendered its consideration in sentencing permissible); *see also State v. West Vangen*, 975 N.W.2d 344, 355–56 (Iowa 2022) (noting court is allowed to consider statements made in allocution in reaching its sentencing decision); *cf. Fetner*, 959 N.W.2d at 135 ("This amounted to an admission by acquiescence to the facts Fetner now contests, and the district court was within its authority to rely on those facts in crafting Fetner's sentence.").

Furthermore, Mazza only moved to strike one specific reference to the child's death in the presentence investigation report, and the report contained other references to the child's death that were not objected to. *See Grandberry*, 619 N.W.2d at 402 ("In determining a defendant's sentence, a district court is free to consider portions of the presentence investigation report that are not challenged by the defendant."). Finally, as the State points out, the victim impact statements contained numerous references to the child's death as "the impact of the offense." *See* Iowa Code § 915.21(2)(e) (allowing victim impact statements to include any "information related to the impact of the offense upon the victim"); *State v. Sailer*, 587 N.W.2d 756, 761 (Iowa 1998) (interpreting the term "offense" broadly "to enable the victim to fully detail the impact of the offense"). But the court's consideration of the child's death as referenced in the victim impact statements "does not prove the court relied on unproven offenses in formulating the sentence"; rather we view the court's consideration of the child's death "at face value to mean the court merely considered the impact on the victim[s] when setting the sentence,"

which is not only permissible, but "required by Iowa Code section 901.5." *Sailer*, 587 N.W.2d at 763.

That leaves us with Mazza's complaint that the court "made several references to the number of children [she] had under her care at the time of the incident." The court did note "[i]t is clear there were too many children in her care at the home," considering that [t]here were six children there and only one person to supervise and to oversee," which was a failure to abide by the rules. But the court made clear it was making these observations from a neglect standpoint, expressly noting these circumstances rendered Mazza "neglectful to an extreme."

This does show the court considered the amount of children in Mazza's care as an attending circumstance to the charge to which she pled guilty, neglect of a dependent person—in relation to which Mazza agrees on appeal she "admitted to being neglectful by placing T.S. in the Pack 'n Play." *See State v. Fleetwood*, No. 22-0484, 2022 WL 17481443, at *2 (Iowa Ct. App. Dec. 7, 2022) ("[A]ttending circumstances are those details accompanying the conviction for which a defendant is being sentenced."); *see also* Iowa Code § 907.5(1)(f) (noting that before deferring judgment, deferring sentence, or suspending sentence, the court shall consider a number of factors, including "[t]he nature of the offense committed"). But it does not amount to an affirmative showing that the court considered the amount of children in Mazza's care as a separate offense of operating a child care center without a license that was not charged or prosecuted but Mazza could have been found guilty of. *See State v. Wickes*, 310 N.W.2d 554, 572 (Iowa 2018) ("A defendant must affirmatively show that the sentencing court relied on improper evidence to overcome th[e] presumption of validity.").

Finding no affirmative showing of an abuse of discretion or defect in the sentencing procedure, we affirm the sentence imposed.

**AFFIRMED.**